# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 24, 2010

No. 08-41043
Summary Calendar

Lyle W. Cayce
Clerk

EDUARDO CATARINO PALACIOS,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:06-CV-151

Before HIGGINBOTHAM, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Eduardo Catarino Palacios, Texas prisoner # 1156135, appeals the dismissal of his application under 28 U.S.C. § 2254 challenging his conviction for murder. A certificate of appealability was granted to review whether trial counsel was ineffective for opening the door to testimony by Palacios's accomplice, Omar Escobedo, that Palacios attempted to kill an eye-witness to the crime, Patricia Salazar. *Palacios v. Thaler*, No. 08-41043 (5th Cir. Sep. 11, 2009)

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

(unpublished; single-judge order).  Because the certified question was rejected on the merits by the Texas Court of Criminal Appeals in Palacios's state habeas action, we must defer to the state court's adjudication unless it was "contrary to" or an "unreasonable application of" clearly established federal law as determined by the Supreme Court.  *See* § 2254(d).  To find an unreasonable application of federal law, this court must determine that the state court's ruling was objectively unreasonable and not simply erroneous or incorrect.  *Williams v. Taylor*, 529 U.S. 362, 411 (2000).  We review the district court's conclusions of law *de novo*.  *Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2001).

To demonstrate that he received ineffective assistance of counsel, Palacios must show that counsel's performance was deficient and that the deficiency prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong defeats the claim.  *Id.* at 697.  To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  To meet this standard, he must show the error undermines confidence in the reliability of the verdict.  *Id.*

Assuming, arguendo, that counsel's performance was deficient, Palacios nevertheless fails to show a reasonable probability that the jury's verdict was affected by Escobedo's testimony that Palacios attempted to kill Salazar. Palacios asserts that the testimony affected the outcome of his trial because it gave credibility to the State's theory of the case, it suggested that he wanted to cover up the murder, and it "effectively destroyed" his theory that Escobedo was the murderer.  According to Palacios, in the absence of the evidence concerning Salazar, the weight of the evidence would have tipped in his favor.  He emphasizes testimony by a forensic analyst that residue from a firearm is more likely to be found on the back of a shooter's hand than his palm.  He highlights the analyst's testimony that gunshot residue was detected on the back of Escobedo's hands but not on the back of Palacios's hands.  He notes the analyst's

2

finding that "Escobedo either discharged a firearm, handled a discharged firearm, or was in close proximity to a discharged firearm." Palacios also relies upon the prosecutor's repeated emphasis of Escobedo's testimony concerning the alleged attempt to kill Salazar.

The defense's theory of the case was that Escobedo killed the victim and was lying about Palacios to save himself. Counsel's opening the door to additional inculpatory testimony by Escobedo did not "destroy" that theory. The jury credited Escobedo's testimony despite his self-serving account of the events. *See Palacios v. State*, No. 04-03-00200-CR, 2004 WL 2533239, at \*3 (Tex. App.-San Antonio Nov. 10, 2004). Even without Escobedo's testimony about Salazar, there was ample evidence to support a guilty verdict. Escobedo testified that he saw Palacios shoot the victim twice and kill him. He testified that Palacios fought with the victim inside of the house, shot the victim inside of the house, followed the victim into the street, hit the victim on the head with the butt of his gun, kicked the victim, then shot the victim again in the street as the victim tried to get up from the ground. After his own gun jammed, Palacios took Escobedo's .380 caliber gun.

Escobedo testified that he assumed that Palacios took his gun to shoot the victim. According to Escobedo, Palacios hit the victim again in the back of the head with the butt of Escobedo's gun, using enough force to break the gun. Palacios and Escobedo heard sirens and ran from the scene. Escobedo testified that, as they started to run away, he grabbed the two guns from Palacios. While they were running, they realized that they were going to be apprehended, and Palacios took his own gun back from Escobedo.

A police officer corroborated Escobedo's account by testifying that he saw two men (whom he later identified as Escobedo and Palacios) running a half-block from the crime scene who appeared to be concealing something at their waistlines and to be exchanging something that could have been two handguns. Escobedo's testimony also was corroborated by testimony from a crime lab

3

analyst that eight particles of substances consistent with gunshot residue were found on Palacios's right hand, while only one particle was found on Escobedo's right hand.

In light of all of the evidence of Palacios's guilt, the Texas Court of Criminal Appeals did not unreasonably apply *Strickland*. *See Strickland*, 466 U.S. at 687, 694, 697; § 2254(d). The judgment of the district court is AFFIRMED.